STATE of Missouri at the relation of STATE HIGHWAY COMMISSION of Missouri, Relator-Respondent,

v.

PUBLIC SERVICE COMMISSION of the State of Missouri et al., Respondents,

and

Chicago, Rock Island and Pacific Railroad Company, a corporation, Intervenor-Appellant,

Chicago, Milwaukee, St. Paul and Pacific Railroad Company, a corporation, Intervenor-Appellant.

No. 55453.

Supreme Court of Missouri, Division No. 2.

Sept. 13, 1971.

Motion for Rehearing or for Transfer to Court En Banc Denied Oct. 11, 1971.

Robert L. Hyder, Carl E. Williamson, Jefferson City, for relator-respondent.

William C. Phelps, Morrison, Hecker, Cozad, Morrison & Curtis, Kansas City, for Chicago, M., St. P. & P. R. Co.

Thad C. McCanse, James & McCanse, Kansas City, for Chicago, R. I. & P. R. Co.

BARRETT, Commissioner.

In connection with the construction of Route 71 B.P. in Clay County into a divided four-lane highway, specifically in connection with the construction of an overpass grade separation over the tracks of the two appellant railroads and pursuant to chapter 389, particularly Sec. 389.640, RSMo 1969, V.A.M.S., the State Highway Commission invoked the jurisdiction of the Public Service Commission. Insofar as applicable at this particular point the statute provides that "No public road, highway or street shall hereafter be constructed across the track of any railroad * * * without having first secured the permission of the commission" (Public Service Commission), RSMo 1969, Sec. 389.640, V.A.M.S. There is an existing two-lane Route 71 B.P. Highway and the State Highway Commission proposes to accomplish the separation and division by utilizing the existing highway and its overpass by constructing a new two-lane roadway and overpass paralleling, in general, the existing highway and the existing overpass.

This appeal is concerned solely with the clearances, horizontal and vertical, of the proposed new overpass. In its application to the Public Service Commission the State Highway Commission in its plans and specifications proposed vertical clearances of 22.75 feet and horizontal clearances of 16.4 feet. The railroads in their responses to the application and in their proof proposed vertical clearances of 23 feet and horizontal clearances of 18 feet. The improvements, all paid for from highway funds, as proposed by the highway department would cost $80,500.00, and as proposed by the railroads would cost an additional $18,000.00. The existing overpass, forty feet from the proposed bridge, has

vertical clearances of 23 feet ⅛ inch and horizontal clearances of 11 feet 6½ inches. The Public Service Commission, after a full-scale hearing, in its report and order adopted the measurements and dimensions provided by the highway department and granted the request to construct the additional overpass but ordered the construction in accordance with the clearances advanced by the railroads rather than as proposed by the State Highway Commission— that is, vertical clearances of 23 feet and horizontal clearances of 18 feet. The State Highway Commission, dissatisfied with the report and order, caused the proceedings to be reviewed by the Circuit Court of Cole County (Const.Mo., Art. 5, Sec. 22, V.A.M.S. State ex rel. Chicago, R. I. & P. R. Co. v. Public Service Commission, Mo., 312 S.W.2d 791) and that court, upon review, set aside the order of the Public Service Commission, on the grounds, among others, that it was "based entirely upon the wants of the railroad companies," that there was "no finding whatsoever that the additional clearances are necessary." The circuit court judgment also recited that the order "takes away from the Missouri State Highway Commission its statutory authority and direction to plan and construct the public highways of the State of Missouri." The two railroads have appealed the circuit court judgment and thus the crux of the controversy is presented.

While the arguments of the parties are far-reaching and would present for resolution a conflict in jurisdiction of two important state agencies—the State Highway Commission and its powers and prerogatives (Const.Mo., Art. 4, Sec. 29; ch. 226, RSMo 1969, V.A.M.S.) on the one hand and the Public Service Commission and its powers and prerogatives (ch. 386, RSMo 1969, V.A.M.S.) on the other hand—it is not necessary to a disposition of this appeal to consider these basic problems in depth. It is sufficient to say that the State Highway Commission urges and the circuit court found, at least impliedly, that in issuing its order the Public Service Commission had exceeded its lawful power and authority in ordering the bridge clearances as presented by the railroads. In its brief the highway department contends that the order is "against (the) competent, substantial and undisputed evidence that the bridge clearances proposed by the Highway Commission were adequate and in excess of those required by law and Public Service Commission rule." And the highway departments sets forth seven respects in which it says that the order was beyond the power and authority of the Public Service Commission. These are (1) that the clearances ordered are in excess of the clearances specified in the statutes and the commission's own rules (RSMo 1969, Secs. 389.-580; 389.590), V.A.M.S., (2) the order is based entirely on the wants of the railroads and contrary to the interest of the public, (3) that the order usurps the exclusive authority of the State Highway Commission to design and construct highways, including overhead bridges (Const.Mo., Art. 4, Sec. 29, RSMo 1969, Sec. 226.130), (4) that the Public Service Commission has embarked upon the road building business, (5) and (6) that the order interferes with the State Highway Department's sole responsibility for compliance with federal law and regulations in order for the state to qualify for federal aid and funds and (7) requires the expenditure of $18,000.00 of "public money for private use, i. e., because of the wants and to the benefit of railroad corporations." These matters are all presented with vigor and great competence but it is not necessary to explore them in detail.

The preliminary and pervasive problem, perhaps all but determinative of the appeal, is the scope of review by the circuit court. This problem was last reviewed and reconsidered by the court en banc in State ex rel. C., R. I. & P. R. Co. v. Public Service Commission (1958) Mo., 312 S.W.2d 791. That case involved the validity of an order of the commission denying a railroad's application to abandon certain service between Eldon and Kansas City. Also, in

that case the Circuit Court of Cole County affirmed the commission's order and the railroad appealed. This court reversed both the commission and the circuit court but in so doing laid down these precepts as to the scope of review. It was pointed out that the Public Service Commission's powers were "referable to the police power" and that it is "a fact-finding body," that it was "not the province of the courts to interfere" as long as the commission "did not run afoul of constitutional and statutory requirements and the inherent powers of the courts." In conclusion as to the scope of review, bearing in mind what the court did, it was concluded:

"* * * that the judicial function neither requires nor justifies disregard of the findings of the commission. Those findings are prima facie correct under Section 386.270, and the complaining party carries the burden of making a convincing showing that they are not reasonable or lawful. Consequently, we are convinced and we hold that the clause in Section 386.510 stating that cases on review 'shall be tried and determined as suits in equity,' construed in the light of the overall remedial purposes of the entire act, means no more than that *when the court has determined whether an order or decision of the commission (made in the lawful exercise of its discretionary powers) is supported by competent and substantial evidence upon the whole record and is reasonable, or,* as is sometimes conversely stated, *whether it is arbitrary or capricious or is against the overwhelming weight of the evidence, the court has performed its whole duty.* We turn to that duty." (Emphasis supplied.)

This rule has not been changed or modified and does not appear to have been adhered to in this particular instance.

In this connection, over the years since 1913, at the instigation of various public bodies and particularly upon the initiative of the State Highway Commission, and against the utmost resistance of railroads, the jurisdiction of the Public Service Commission over the subject of railroad overhead passes has been repeatedly invoked and thoroughly established. And now upon receiving what it deems in part an unfavorable decision as to the mere height and width of clearances at a cost of $18,000.00 added to an $80,500.00 project, the highway commission not only seeks to impose its own limitations upon the scope and force of the commission's orders but in effect challenges its jursidiction with respect to grade separations and overpasses. To illustrate the establishment of the commission's jurisdiction, in 1924, in State ex rel. Wabash R. Co. v. Public Service Commission, 306 Mo. 149, 267 S.W. 102, at the instigation of the City of St. Louis the Public Service Commission abolished the Wabash grade crossing over Delmar Boulevard and ordered the construction of what was then called a viaduct. In so doing the commission adopted the plan as proposed by the city and apportioned the costs 40% to the city and 60% to the railroad. (This case was before the courts on two other occasions: Missouri ex rel. Wabash R. Co. v. Public Service Comm., 273 U.S. 126, 47 S.Ct. 311, 71 L.Ed. 575 and State ex rel. Wabash R. Co. v. Public Service Comm., 317 Mo. 172, 295 S.W. 86.) A dissenting member of the commission would have adopted the railroad's plan for eliminating the grade crossing. On appeal to the Circuit Court of Cole County that court reversed the commission's order and this court in an exhaustive opinion held that the commission's order was lawful, just and reasonable and reversed the court's judgment and directed an affirmance of the majority order of the Public Service Commission. It is not necessary to detail all the factual circumstances of that or of other opinions by this court, or even of the various factors considered, as to the jurisdiction and power of the Public Service Commission, it is sufficient to excerpt these quotations: "Unless it clearly appears from the evidence in the record that the choice of the city plan for eliminating

the grade crossing at Delmar Boulevard, by the ruling membership of the commission, is unreasonable, unjust or unlawful, it is our duty, under the express command of the Public Service Act, to refuse to set aside or avoid said order, and the burden of proof that said order is so clearly unreasonable, unjust or unlawful, is upon the respondent railroad companies." As to cost, the city plan exceeding the railroad plan by $200,000.00, the court concluded that "the greater cost is (not) so excessive as to be the controlling consideration in this case." As to the railroad's contention that the Public Service Commission Act did not give the commission power "to determine the manner or plans of eliminating grade crossings" the court held that "the commission has full power and authority to determine the manner, as well as the terms under which grade separations shall be made." (306 Mo. 149, l. c. 167, 169, 175, 267 S.W. 102, 109.) This case also considered the subject of seepage of water and drainage in connection with the clearances and the force of a federal statute—there the United States Transportation Act. And, in the latter connection see Davis Const. Co. v. State Highway Commission, Mo. App., 141 S.W.2d 214; C., R. I. and P. Ry. Co. v. Public Service Comm., 315 Mo. 1108, 287 S.W. 617. In the ensuing years·these rules and tests have been applied to the reconstruction of bridges, including clearances, State ex rel. C. B. & Q. R. Co. v. Public Service Commission, Mo., 334 S.W.2d 54, and to subways, viaducts and the construction of new overhead bridges. State ex rel. Alton R. Co. v. Public Service Commission, 334 Mo. 832, 68 S.W.2d 691; State ex rel. Alton R. Co. v. Public Service Comm., 334 Mo. 985, 70 S.W.2d 52; State ex rel. Alton R. Co. v. Public Service Comm., 334 Mo. 992, 70 S.W.2d 55; State ex rel. Alton R. Co. v. Public Service Comm., 334 Mo. 995, 70 S.W.2d 57; State ex rel. Alton R. Co. v. Public Service Comm., 334 Mo. 1001, 70 S.W.2d 61. In the noted Wabash case it was subsequently and unsuccessfully argued that "the separation of the grade was made primarily for the convenience and benefit of the traffic on the highways" and therefore the cost had no relevance "to the benefits" to the railroad. State ex rel. Wabash R. Co. v. Public Service Comm., 340 Mo. 225, 239, 100 S.W.2d 522. It should be interpolated that the expenditure of public funds for overhead crossings does not violate the constitutional inhibition of grants to private corporations. State ex rel. State Highway Comm. v. Eakin, Mo., 357 S.W.2d 129, 134.

While the highway department argues that the commission's order as to the clearances is against the "competent, substantial and undisputed evidence," it does not mean to say that there is no proof or evidence whatever to support the order for the greater clearances or as in State ex rel. C., R. I. & P. Ry. Co. v. Public Service Comm., 312 S.W.2d l. c. 805, that the losses were "so patently disproportionate to the public convenience and necessity then or thereafter to be served by them as to render the order that they (services) be continued unreasonable and arbitrary within the meaning of the public service commission statutes." As indicated, the basis of this particular argument is that the clearances are in excess of those prescribed by the commission's own rules and the statutes, RSMo 1969, Sec. 389.590, V.A.M.S. The statute does not establish an absolute maximum, however, and the argument ignores the fact that clearances of 22 feet are required "*Except in cases in which* the public service commission finds that *such construction is impracticable.*" (Emphasis supplied.) It may well be that the commission's finding and recitation of facts is not as full and complete as it could or should have been, certainly as compared to the elaborate findings in the noted orders. State ex rel. Public Service Comm. v. Padberg, 346 Mo. 1133, 145 S.W.2d 150. But there is no complaint here of the scope of the factual findings, as to the issue of clearances the orders are clearly understood by all concerned and as indicated, supported by substantial evidence.

As has been noted heretofore, the legislature has delegated, as a police power, the subject matter of grade crossings and overhead passes to the Public Service Commission. C., R. I. & P. R. Ry. Co. v. State Highway Commission, 322 Mo. 419, 17 S.W.2d 535. This is not to deny to or place undue limitations upon the powers and duties of the State Highway Commission over highways and their necessary integrals, bridges, (Const.Mo. Art. 4, Sec. 29; RSMo 1969, Sec. 226.140, V.A.M.S.), neither is it to expand the scope and jurisdiction of the Public Service Commission beyond its statutory authorization (RSMo 1969, Secs. 389.580; 389.590, V.A.M.S.): "The State Highway Commission has full power to locate roads, to proceed in condemnation of crossings, and to determine the propriety, expediency and necessity of such crossings. But as a limitation upon that power the Public Service Commission has authority to control railroad crossings (RSMo 1969, Sec. 389.640), to determine and prescribe the *manner*, including the particular point of crossing, the separation of grades, the terms of installation, operation and maintenance, and apportion the expenses." State ex rel. C. G. W. R. Co. v. Public Service Commission, 330 Mo. 729, 735, 51 S.W.2d 73, 75.

The order of the Public Service Commission was supported, it was not unlawful or patently unreasonable and for the reasons indicated the judgment of the circuit court is reversed with directions to affirm the order of the commission.

STOCKARD and PRITCHARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the court.

MORGAN, P. J., DONNELLY, J., and HENLEY, Alternate Judge, concur.

FINCH, J., not sitting.